BROWN *v.* BROWN
(Three Appeals in One Record)
[No. 129, October Term, 1951.]

*Decided April 2, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Stanford Hoff* and *Donald C. Sponseller* for the appellant.

*Robert E. Clapp, Jr.,* for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Carroll County that further proceedings in a suit for separate maintenance be suspended.

On September 14, 1950, the appellant filed a bill of complaint against the appellee in which she alleged among other things the following. He had treated her with great cruelty, striking and beating her, and had failed to support her and their two infant children. He owned numerous parcels of real estate, music boxes, pinball and cigarette vending machines, mortgages, and notes. He was the owner and operator of a light lunch and soda fountain. From all of these operations he had an income of about three thousand dollars monthly. He had threatened to dispose of these assets for the purpose of depriving her and the children of support. On account of

his treatment, her health had been so impaired that she could not obtain employment and she was without any income. She asked for custody of the infant children, alimony, alimony *pendente lite,* counsel fees, that the husband be enjoined from disposing of his real estate and personal property, and for other and further relief. The husband filed an answer in which the material allegations of the bill were denied. The chancellor filed an opinion finding the net income of the husband to be about $3,000.00 yearly, that he was heavily in debt, and awarding the wife by order dated September 14, $37.50 per week as alimony *pendente lite.*

On January 12, 1951, the husband, appellee, filed a petition in the case alleging that he had paid the alimony *pendente lite* and counsel fees. Notwithstanding this his wife, on or about December 15, 1950, and on several occasions thereafter, did break and enter his store property and apartment and remove between $1,500.00 and $2,000.00 in cash, $1,200.00 in United States Bonds in his name alone, bank books in the names of his children, and certain deeds. She also removed and recorded a deed to a property which had not previously been recorded. She removed his business records, articles of household equipment, linens, pictures of his children, Christmas decorations and other articles, all of which belonged to him. She left a letter in which she said she had deposited the money in bank; the deeds, bank books, and bonds in the safe deposit box. She had taken the Christmas ornaments for the children. She wrote that she had "sought my attorney's advice and State Police are aware of my actions. I also have witnesses that are neutral". He asked that she be directed to account for the money, bonds, records, and other things taken; that she be ordered to return them to him; and that she be ordered to refrain from molesting him and his premises. Appellant demurred to that petition.

On April 18, 1951, appellant filed a petition to amend her amended bill of complaint, which petition was granted. On the same day she filed an amended bill

which, in addition to the matters alleged in the former bill, charged her husband with adultery upon numerous occasions. She also alleged that she and her husband were owners as tenants by the entireties of certain real estate which the husband had not properly managed, the rents from which he had retained. She asked for custody of the children, alimony and alimony *pendente lite*. She further asked that the Court appoint a receiver to care for, manage and collect the rents and income from all of the properties owned by her and her husband as tenants by the entireties, and that her husband be required to account to her for her proper share of the rents since August 28, 1950. The chancellor ordered that the previous order of September 15, 1950, be continued in full force and effect. The appellee filed an answer denying the material allegations of the amended bill.

On May 18, 1951, the chancellor filed an order overruling appellant's demurrer to appellee's petition of January 12, 1951, with leave to the appellant to answer. An answer was filed by the appellant on May 28, 1951, in which she stated that she entered the property, which had formerly been occupied by her as a home, with a key which she had in her possession. She admitted removing the money and property which she said belonged to her or in which she or her children had some right of ownership. She admitted removing some of her husband's records because he had without authorization used her name in making his 1949 income tax return, and had refused to inform her thereof. She admitted removing from the apartment which she shared with her husband before the separation, certain articles belonging solely to her and her two children which he had wrongfully refused to turn over to her. She said she had returned to him a $1,000.00 United States Bond registered in his name alone, and all other bonds registered in his name but payable on death to her or their two children. She alleged that she had not disposed of any of the money or property removed.

The docket entries show that a hearing was held on the petition and answer on September 14, 1951. The testimony taken at that hearing does not appear in either the transcript or the record. On September 24, 1951, the chancellor filed a memorandum in which he recited: " 'A wife has no interest in the personal property of her husband, or any portion of its proceeds and profits, and on leaving her home she cannot take from the home the household goods without his consent.' *Johnson v. Johnson*, 125 Mich. 671, 85 N. W. 94." The chancellor pointed out therein the award of alimony of $37.50 per week; that there was no default in the alimony; and that the wife entered the husband's home and removed property, in some of which she admits she had no interest. He further recited: "She sought the aid of this Court in her domestic difficulties and some relief has already been afforded her. There is a maxim in equity that he who seeks equity must do equity, and another that he who seeks equity must come with clean hands. When the plaintiff entered her husband's home and took property therefrom, without his consent, she was doing an act not authorized in law and, therefore, the maxims are applicable. As the plaintiff resists the petition and is unwilling to do equity," the chancellor thereupon passed an order on September 24, 1951, ordering "that the further prosecution of these proceedings be suspended until such time as the plaintiff, Edith Baker Brown, returns the property which she removed on or about December 15, 1950, from the defendant's residence without his consent." From that order the appellant appeals.

As a result of a petition filed by the wife the chancellor ordered the husband to pay $300.00 to the solicitors for the appellant for the purpose of prosecuting the appeal. From that order the wife appeals and the husband cross-appeals.

It is well established in this State that in the absence of statute, the equity courts have no power to transfer the property of either spouse to the other, or otherwise

dispose of it or to adjust the property rights of the parties in a suit for divorce. *Hall v. Hall,* 180 Md. 353, 355, 24 A. 2d 415; *Dougherty v. Dougherty,* 187 Md. 21, 32, 48 A. 2d 451; *Gunter v. Gunter,* 187 Md. 228, 232, 49 A. 2d 454; *Lickle v. Boone,* 187 Md. 579, 584, 51 A. 2d 162, 170 A. L. R. 156. Code 1947 Supplement, Article 16, Section 42A, Acts of 1947, Chapter 220, now provides: "Whenever a Court shall grant a divorce a mensa et thoro or a divorce a vinculo matrimonii, it shall have the power to hear and determine all questions which may arise between the parties to such proceeding in connection with the ownership of personal property (except chattels real) held, possessed or claimed by either or both of them, and shall have the power to make a division of such property between them, or order a sale thereof and a division of the proceeds of such sale, or make such other disposition thereof as the Court may deem proper." *Hahn v. Hahn,* 192 Md. 561, 64 A. 2d 739. This being a suit for separate maintenance, and not covered by any statutory provision, there was therefore no power in the chancellor to transfer the property of either spouse to the other or to adjust the property rights of the parties. If the wife follows the direction of the court and returns to her husband the property which she removed, and it is later determined that the wife is entitled to that property, there is no jurisdiction in this case for an order for the return of that property to her. Under the order of the chancellor, now before us, if she does not so return it, her case is permanently suspended. We therefore conclude that this is such a final order from which an appeal can be taken and appellee's motion to dismiss this appeal will be denied. Code, Article 5, Section 30; *Purdum v. Lilly,* 182 Md. 612, 622, 35 A. 2d 805.

The learned chancellor, having no power to transfer the property of either spouse to the other or to adjust their property right, bases his action on the fact that the wife in removing the property did an act "not authorized in law" and therefore she violated the clean hands

doctrine because she who seeks equity must do equity. In the case of *Meeks v. Meeks*, 189 Md. 80, 54 A. 2d 334, the husband filed a bill for a divorce *a vinculo* on the grounds of abandonment. The wife filed a cross bill on the grounds of abandonment and adultery. The chancellor found that by associating with other women as if he were an unmarried man, he violated the clean hands doctrine. This Court said, 189 Md. at page 87, 54 A. 2d at page 337: "The defense of recrimination can be sustained only by proof of a marital offense which would constitute grounds for divorce. We may assume, however, that the equitable doctrine of 'clean hands' is applicable in a divorce court and is not restricted to the defense of recrimintaion. But 'equity does not demand that its suitors shall have led blameless lives'. *Loughran v. Loughran*, 292 U. S. 216, 229, 54 S. Ct. 684, 689, 78 L. Ed. 1219. This Court has repeatedly held (and now holds) that divorces should not be granted for light or trivial causes; but few opinions in divorce cases indicate that the conduct of either of the parties has been exemplary." Assuming without deciding that the clean hands doctrine applies here, *Berman v. Berman*, 191 Md. 699, 704, 62 A. 2d 787, if the wife had removed property from a house other than that of her husband, without authority, she would have been guilty of "doing an act not authorized in law". The chancellor would hardly have thereby found her guilty of violating the clean hands doctrine and discontinued the separate maintenance suit here on that ground. Having no power to adjust the property rights of the parties under the facts here, we must conclude that the clean hands doctrine was not applicable or sufficient authority for the passage of the order appealed from. *Sorensen v. J. H. Lawrence Co.,* 194 Md. 546, 71 A. 2d 292. The prayer in the amended bill of complaint is for a receiver to care for and manage and collect the rents and income from all of the properties owned by the parties as tenants by the entireties and makes no reference to any other property.

The appellant further contends the allowance of counsel fees in the order of October 9, 1951, in the amount of $300.00 was not sufficient for the appeal to this Court. Of course, the counsel fee should be awarded according to the factors of labor, skill, time, and benefit, but cannot be disassociated from the financial resources of the husband. *Waters v. Waters,* 191 Md. 436, 441, 62 A. 2d 250. From the finding of the chancellor as to the financial condition of the husband, we are of opinion that the award was ample. The appellee, in turn, cross-appeals and contends that no allowance of counsel fee should have been made for the appeal. Having found that the order of the chancellor suspending all proceedings was a final order, pending appeal, we are of opinion that the award of counsel fees for the appeal was proper. The decree will be affirmed as to the allowance of counsel fees for the appeal, and otherwise reversed.

> *Order of October 9, 1951, affirmed,*

> *Order of September 24, 1951, reversed, and case remanded for further proceedings. Costs to be paid by the appellee.*

MARKELL, J., delivered the following concurring opinion.

The court did not directly order plaintiff to restore what she took or find her in contempt for not doing so. Therefore I concur in holding that the progress of her suit should not be stayed indefinitely till she washes her hands of other misconduct.

I understand this court leaves open the questions of the power of the court to order plaintiff to restore, to find her guilty of contempt, and to stay further proceedings till she purge herself of contempt. She prayed not only maintenance, but a receivership and also security for alimony. I do not know what power the court has

to require security or to pass upon title to property. But these questions of jurisdiction were for the court to decide, not for plaintiff to decide by taking the law in her own hands. Self-help has its place in the law, but not in competition with the court whose jurisdiction plaintiff has invoked. It would shock the general sense of fitness to suggest that a court has no power to prevent a husband from resorting to strong arm methods; on principle it should be just as shocking if the court could not prevent such tactics by the wife.